# IN THE COURT OF APPEALS OF IOWA

No. 15-0211
Filed March 9, 2016

**MELROY DEAN BUHR,**
        Plaintiff-Appellee,

**vs.**

**MAYER'S DIGGING CO., AND MARK WAGNER,**
        Defendant-Appellants.

_____

Appeal from the Iowa District Court for Howard County, John J. Bauercamper, Judge.

The defendants appeal following a jury verdict for the plaintiff on his claim of trespass to real estate.  **REVERSED AND REMANDED FOR NEW TRIAL.**

Collin M. Davison of Heiny, McManigal, Duffy, Stambaugh & Anderson, P.L.C., Mason City, for appellant.

Theodore F. Sporer of Sporer & Flanagan, PLLC, Des Moines, for appellee.

Heard by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**DOYLE, Judge.**

Mayer's Digging Co. and Mark Wagner appeal following a jury verdict in favor of Melroy Buhr on his claim of trespass to real estate. They seek a new trial based on Buhr's failure to comply with discovery rules, the admission of prejudicial testimony regarding indemnification, and the jury instruction concerning the calculation of damages.

After reviewing the record, we conclude the trial court abused its discretion in allowing Buhr to introduce evidence of a third party's promise of indemnification of the defendants. Because there is no showing the introduction of this irrelevant and immaterial evidence lacked prejudice, the evidence was presumptively prejudicial and the defendants are entitled to a new trial. Accordingly, we reverse and remand for further proceedings. As a result, we do not reach the remaining issues raised by the defendants.

### *I. Background Facts and Proceedings.*

Melroy Buhr owns and resides on property in Howard County, which includes 160 acres of farmland. Sam and Marilyn Hasapopoulos own the property to the west. Their one-half-mile-long shared boundary line was marked by a fence line and was populated by trees, grass, shrubs, and berry bushes, which provided erosion control and refuge to wildlife.

Ted and Sherry Hjelmeland rent the property owned by the Hasapopouloses. The Hjelmelands have partnered with Pinicon Farms, a large-scale farming operation owned by Jim Koenigs. As part of routine maintenance on the land, Koenigs contracted with Mayer's Digging to remove the trees, brush, and remnants of fence from the boundary line shared with Buhr. As a result,

Mayer's Digging co-owner Mark Wagner cleared approximately twelve feet of land on each side of the shared boundary. Although Wagner assumed Koenigs had Buhr's permission to excavate his property, Buhr later informed Wagner that permission was never granted.

Buhr sent Mayer's Digging a letter requesting $57,750 to reimburse him for the damage the excavation caused to his property, and the letter was forwarded to Koenigs. In his reply, Koenigs accepted responsibility for excavating the properly line without obtaining Buhr's consent. Although Koenigs rejected Buhr's offer for cash settlement, he offered to reestablish the property line, grade the soil, and perform "other work required to restore the productivity of the land affected."

When no settlement was reached, Buhr filed this trespass action against Mayer's Digging and Wagner. The focus at trial was whether the defendants' actions damaged Buhr and, if so, in what amount. Buhr testified regarding his monetary damages for the loss of the trees and brush from his land, its effect on his crops, and its possible effect on payments he receives for participating in a wildlife-enhancement program. Evidence was also admitted regarding the cost of replacing the fence line, the cost of replacing and reestablishing trees and shrubbery, and the value of the timber cut from the land. The jury returned a verdict in favor of Buhr, awarding him $118,900 in damages. After their motion for new trial was denied, the defendants filed a timely notice of appeal.

## II. Scope of Review.

Our review of the trial court's ruling on a motion for new trial depends on the grounds asserted in the motion. *Bryant v. Rimrodt*, 872 N.W.2d 366, 375

(Iowa 2015). The trial court's evidentiary rulings are discretionary. *See Eldridge v. Casey's Gen. Stores, Inc.*, 533 N.W.2d 569, 570 (Iowa Ct. App. 1995). Therefore, we review the defendants' claim the trial court admitted irrelevant and prejudicial evidence of indemnification for an abuse of discretion. *See Vaughan v. Must, Inc.*, 542 N.W.2d 533, 542 (Iowa 1996) ("If the motion and ruling are based on a discretionary ground, the trial court's decision is reviewed on appeal for an abuse of discretion.").

An abuse of discretion occurs when the court exercises its discretion on clearly untenable grounds or to a clearly unreasonable extent. *Graber v. City of Ankeny*, 616 N.W.2d 633, 638 (Iowa 2000). If the evidentiary ruling is not supported by substantial evidence or is based on an erroneous application of the law, the ground or reason is untenable. *Id.* We are reluctant to interfere with a jury verdict and give considerable deference to the trial court's decision to deny a new trial. *Jack v. Booth*, 858 N.W.2d 711, 718 (Iowa 2015).

### III. Indemnification Evidence.

At trial, evidence was introduced regarding Koenigs's agreement to satisfy the judgment entered against the defendants for the excavation of Buhr's property. That evidence was first introduced during Buhr's direct examination of Wagner at the start of trial:

> Q. Now, do you have an agreement with Mr. Koenigs that he or his corporations, one of his corporations, will indemnify you for any verdict that's rendered against you in this case?
> [DEFENSE COUNSEL]: I'm going to object. That's irrelevant.
> THE COURT: Overruled. You may answer.
> A. I have a—we have dealt with Jim Koenigs, yes.
> Q. Mr. Koenigs has told you that if the jury awards a verdict to Mr. Buhr, Mr. Koenigs will pay that? A. Basically, yes.

Q. So there is kind of a chain of problems? You have a problem with Mr. Buhr, and Pinicon Farms and Mr. Koenigs has a problem with you; right? A. Yes.

Buhr's counsel again raised the indemnification issue during his cross-examination of Koenigs. In response to a question regarding a settlement offer, Koenigs replied, "I'm not the one being sued."

Q. Well, you're paying for the lawyer, aren't you? You're paying for—
[DEFENSE COUNSEL]: Objection, irrelevant.
THE COURT: That's already in evidence. Fair comment on the evidence. Objection overruled.
Q. You are, in fact, paying the defendants' lawyer, aren't you? A. Yes.
Q. You are, in fact—you have, in fact, agreed to, as Mr. Wagner testified, reimburse them for whatever verdict this jury issues, haven't you? A. Yes.

The indemnification evidence was again highlighted in closing argument, during which Buhr's counsel characterized the defendants as "pretty good guys" who were "duped" by Koenigs. Counsel stated Koenigs "deceived them by telling them that he had permission" to excavate Buhr's property, emphasizing the defendants were "misled." Counsel then explained "the chain of liability" to the jury, describing Buhr as "the one who is damaged," Wagner as "the actual tortfeasor," and Mayer's Digging as "vicariously liable" for Wagner as his employer. Counsel informed the jury that although the chain of liability for Buhr stopped with the defendants, "[t]hat chain keeps going" because, although Buhr has a "legal problem" with the defendants, the defendants

have a legal issue with Pinicon Farms and Jim Koenigs. That's the chain that just keeps going and going.
And I guess, from what Mr. Koenigs was saying, that somewhere there's this hidden, other, unseen person that instructed him to destroy the Buhr fence line and the Buhr tree line.

We don't know who this mystical person might be, but maybe there's another link up this chain; but that isn't for you to speculate.
. . . [Y]our job is [ ] to decide what damage was done to the plaintiff by the defendants, and . . . what happens after that is not for us to decide in this courtroom today or to argue about. Whether or not Mr. Koenigs will truly indemnify the defendants, as he sort of implied he would, is not before you.

The defendants contend the trial court abused its discretion in admitting the indemnification evidence. They contend the indemnification evidence is irrelevant and prejudicial.

### A. Relevance.

In order to be admissible, evidence must be relevant. *See Graber*, 616 N.W.2d at 638. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Iowa R. Evid. 5.401. "The test is 'whether a reasonable [person] might believe the probability of the truth of the consequential fact to be different if [the person] knew of the proffered evidence.'" *McClure v. Walgreen Co.*, 613 N.W.2d 225, 235 (Iowa 2000) (alteration in original) (citation omitted).

Buhr argues the indemnification evidence was relevant to prove Koenigs instructed Mayer's Digging to destroy the tree and fence line intentionally, Mayer's Digging was acting in conformity with that instruction, and Koenigs ratified Mayer's Digging's actions upon learning what had occurred. He claims this evidence makes it more likely that Mayer's Digging intended to destroy Buhr's property because Koenigs had instructed Mayer's Digging to do so and then ratified Mayer's Digging's actions by agreeing to indemnify it for any liability.

The only issue for the jury to decide was the question of Buhr's damages. As Buhr's counsel informed the jury during opening statements: "The evidence in this case, much of it isn't controverted. As a matter of fact, I think—I don't know this, I'm not certain, but I believe the defendants will pretty much admit the trespass." They did. The jury was therefore instructed that the first three elements of the trespass claim—Buhr's ownership of the real estate, the defendants' intentional entry onto the property, and the lack of permission to enter onto the property—were not contested.

Even assuming the evidence that the defendants were hired by Koenigs to remove the trees and fence line was necessary to show the defendants intentionally entered Buhr's real estate, it was unnecessary and irrelevant for counsel to procure testimony regarding Koenigs's act of paying for the defendants' legal representation or Koenigs's offer to pay Buhr's damages. The evidence had no relevance whatsoever and was therefore improper.

In denying the defendants' motion for new trial, the trial court found that defense counsel opened the door for the indemnification evidence by introducing it while cross-examining Buhr. However, the record shows the indemnification issue was first raised by Buhr's counsel during his direct examination of Wagner, contradicting the trial court's finding. The trial court also noted defense counsel asked Koenigs during direct examination about his farming background, whether he rented and owned farmland, "and suggested in his questions that Koenigs was a large operator." This evidence does not make the question of indemnification relevant to any issues in the case.

### *B. Prejudice.*

Although the indemnification evidence was not relevant, our inquiry does not end there. When irrelevant evidence is admitted over a proper objection, the evidence is presumed to be prejudicial. *Id.* If the record shows a lack of prejudice, however, reversal is not required. *Id.* Iowa Rule of Evidence 5.103 only requires reversal if a substantial right of the party is affected. We determine whether a substantial right is affected after considering the record as a whole. *Stumpf v. Reiss*, 502 N.W.2d 620, 623 (Iowa Ct. App 1993). If justice would not be served by allowing the trial court judgment to stand, reversal is required. *Id.* In spite of the discretion the trial court is afforded in ruling on evidentiary matters, we will not hesitate to reverse if the jury as allowed to consider evidence that is plainly irrelevant and prejudicial. *Graber*, 616 N.W.2d at 638*.*

Under Iowa common law, it is "generally improper for the subject of liability insurance to be raised in any way before the jury." *Strain v. Heinssen*, 434 N.W.2d 640, 642 (Iowa 1989) (citation omitted). Although indemnification agreements differ from liability insurance, the reason for excluding evidence of liability insurance is equally applicable to indemnification evidence under the facts of this case.[1] *See Robins Eng'g, Inc. v. Cockrell*, 354 So. 2d 1, 3 (Ala.

---

[1] Given the prevalence of insurance policies in today's society, the introduction of indemnity evidence may be more prejudicial than the introduction of evidence of liability insurance. *See Galvan v. Norberg*, No. 04 C 4003, 2006 WL 1343680, at *2 n.2 (N.D. Ill. May 10, 2006) (noting that the federal rule barring liability insurance does not provide a perfect analogy in indemnification cases because "everyone is really aware that people generally carry liability insurance" so silence on the matter "does not necessarily remove the subject from the jury's consciousness," while the existence of an indemnification agreement "is certainly not a matter of common knowledge"); *see also Price v. King*, 122 N.W.2d 318, 323 (Iowa 1963) (noting insurance coverage has become so common "[i]t is not too much to assume that jurors and even judges know what everyone else knows, i.e. that some insurance company may have some interest in some phase of the law

1977) (finding the reasoning and holding of cases regarding remarks as to the existence of liability insurance are apropos in the context of cases involving remarks as to the existence of indemnification). Such evidence "tends to influence jurors to bring in a verdict against a defendant on insufficient evidence." *Laguna v. Prouty*, 300 N.W.2d 98, 101 (Iowa 1981). Further, "it causes jurors to bring in a larger verdict than they would if they believed the defendant would be required to pay it." *Id.*

The evidence presented to the jury and the argument made by Buhr's counsel implied a third party—Koenigs—would be responsible for paying Buhr's damages in lieu of the defendants. This is exactly the kind of evidence that raises concerns that a larger verdict was awarded than would have been awarded if the jury believed the defendants would be required to pay it, especially when coupled with the evidence of Koenigs's "deep pockets." *See McCornack v. Pickerell*, 283 N.W. 899, 903 (Iowa 1939) (finding improper comment was made concerning the defendants' liability insurance where

---

suit"); Martin A. Schwartz, *Section 1983 Litigation Federal Evidence* § 3.06 (2015) (stating "the most important distinction [between testimony concerning liability insurance and indemnification] is that liability insurance is so common that the jury is likely to assume that a personal injury defendant has some kind of liability insurance, whereas, because indemnification is not a matter of common knowledge, lay jurors may well not assume that [a party] is protected by indemnification"). As a result, other jurisdictions have held that, like evidence of liability insurance, evidence of indemnification is improper. *See Shapiro Packing Co. v. Landrum*, 136 S.E.2d 446, 449 (Ga. Ct. App. 1964) ("The generally accepted rule is that the fact that a defendant is insured *or otherwise indemnified against loss in the event of a recovery against him* [cannot] be shown as an independent fact by a plaintiff." (emphasis added)); *St. Louis Cty. v. Seibert*, 634 S.W.2d 590, 592 (Mo. Ct. App. 1982) ("It is improper to suggest that someone not a party to the case has agreed to indemnify a party for damages assessed against it . . . ."); *John Deere Indus. Equip. Co. v. Gentile*, 459 N.E.2d 611, 614 (Ohio Ct. App. 1983) ("Normally, evidence of insurance *or other third-party indemnification* is barred by the collateral source rule, and may justify reversal on appeal or the declaration of a mistrial." (emphasis added)).

plaintiff's counsel told the jury in closing argument "you know who will pay" and the verdict "won't hurt the other side at all"); *see also Standridge v. Martin*, 84 So. 266, 267 (Ala. 1919) ("There can scarcely be made to a jury a more seductive and insidious suggestion than that a verdict for damages against the defendant before them will be visited, not upon that defendant, but upon some invisible corporation whose business it is to stand for and pay such damages.  Such a suggestion, once lodged in the minds of the jury, is almost certain to stick in their consciousness, and to have its effect upon their verdict, regardless of any theoretical exclusion of it by the trial judge."); *Bergendahl v. Rabeler*, 268 N.W. 459, 462 (Neb. 1936) (finding statement in closing argument that a verdict in favor of the plaintiff would not punish the defendant, "when considered with prior questions and statement of counsel relative to insurance, could only be construed by the jury as an assurance that some insurance company would pay the amount of the verdict").

We also note the potential for prejudice caused by the indemnification evidence was not mitigated by a limiting instruction.[2]  The defendants specifically requested the trial court instruct the jury "that [it] not consider the fact that there has been some evidence of indemnification of Mayer's [Digging] by Mr. Koenigs in determining the amount of damages to be awarded in this case."  The trial court denied the request after erroneously finding the defendants opened the

---

[2] A limiting instruction is presumed to reduce any possible prejudice in the erroneous introduction of evidence to acceptable levels.  *See Beeman v. Manville Corp. Asbestos Disease Comp. Fund*, 496 N.W.2d 247, 252 (Iowa 1993).  However, even if a limiting instruction had been given here, it could not cure prejudice, given the immaterial and irrelevant references to indemnification that were intentionally placed before the jury during trial.  *See Price*, 122 N.W.2d at 323.

door to the indemnification evidence. However, regardless of who introduced the indemnification evidence, the requested instruction should have been given because the question of who would be paying the judgment was not properly before the jury. *Cf. Burke v. Reiter*, 42 N.W.2d 907, 912 (Iowa 1950) (noting evidence of the parties' comparative wealth has "nothing to do with the measure of damages"). A limiting instruction may be proper even if no evidence of a third party's responsibility for the judgment is introduced at trial. *See Laguna*, 300 N.W.2d at 101-02.

> [I]t would be far better practice to routinely tell a jury by proper instruction that whether or not any party has any kind of insurance has nothing whatsoever to do with the issues to be decided by the jury. Such is the law and in the administration of justice the truth is more effective than mystery. Such an instruction should also warn the jury against speculation as to the existence, kind or amount of insurance coverage.

*Id.* at 102 (alteration in the original) (quoting *Price*, 122 N.W.2d at 323).

In considering the record before us as a whole, we cannot say the introduction of irrelevant and immaterial indemnification evidence lacked prejudice. Accordingly, we reverse the trial court's ruling on the defendants' motion for new trial and remand the case for new trial.

**REVERSED AND REMANDED FOR NEW TRIAL.**